1  Abran E. Vigil
2  Nevada Bar No. 7548
   Edward Chang
3  Nevada Bar No. 11783
   BALLARD SPAHR LLP
4  100 North City Parkway, Suite 1750
   Las Vegas, Nevada 89106
5  Phone: (702) 471-7000
6  Fax: (702) 471-7070
   Email: vigila@ballardspahr.com
7  Email: change@ballardspahr.com

8  *Attorneys for Plaintiff*

9           **UNITED STATES DISTRICT COURT**

10              **DISTRICT OF NEVADA**

11  WELLS FARGO BANK, N.A., AS TRUSTEE   )  Case No.  2:12-cv-01521-RCJ-CWH
    FOR THE REGISTERED HOLDERS OF        )
12  BANC OF AMERICA COMMERCIAL           )
    MORTGAGE INC., COMMERCIAL            )  **PLAINTIFF'S MOTION FOR**
13  MORTGAGE PASS-THROUGH                )  **SUMMARY JUDGMENT**
    CERTIFICATES, SERIES 2004-5,         )
14                                       )
15         Plaintiff,                    )
                                         )
16  v.                                   )
                                         )
17  DANIEL J. ELEFANTE, an individual, and )
    THEODORE H. TOCH, an individual,     )
18                                       )
           Defendants.                   )
19  _____ )

20         Pursuant to Rule 56 of the Federal Rules of Civil Procedure, plaintiff Wells

21  Fargo Bank, N.A., as Trustee for the registered holders of Banc of America

22  Commercial Mortgage Inc., Commercial Mortgage Pass-Through Certificates, Series

23  2004-5 ("Plaintiff" or "Trustee"), via its Special Servicer, Torchlight Loan Services

24  LLC, requests that the Court grant summary judgment in its favor and against

25  Daniel J. Elefante and Theodore H. Toch (collectively, "Guarantors") for breach of a

26  personal guaranty. This Motion is made and based on the following memorandum of

27  points and authorities, the Declaration of Daniel Greenholtz attached hereto as

28  Exhibit 1, the attached exhibits, the papers and pleadings on file, and any oral

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

1  argument the Court may deem necessary.

2  <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

3  I.    INTRODUCTION

4       This case involves Trustee's enforcement of a personal guaranty for which full
5  recourse against Guarantors was triggered when Borrower filed for bankruptcy
6  protection.   Previously, the Court granted Trustee's motion for partial summary
7  judgment on the issue of liability, finding Guarantors breached a personal guaranty.

8       As will be demonstrated below, it is factually undisputed that Guarantors
9  made no payments under the personal guaranty and Guarantors owe $4,361,958.10,
10  as of June 1, 2013.  Judgment should be entered against Guarantors in the amount
11  of $4,361,958.10, plus Per Diem Interest in the amount of $563.78 and Per Diem
12  Default Interest in the amount of $479.41.

13       Importantly, partial summary judgment has already been granted on the issue
14  of liability (i.e., the first two elements of a breach of contract claim). Within that
15  order, the court also dispensed with the broad brush "A.B. 273" defenses the
16  Guarantors injected into that briefing.  With those issues having been decided, there
17  is no impediment to ruling in Trustee's favor on the element of damages.

18  II.   STATEMENT OF UNDISPUTED FACTS

19       Since the Court previously concluded that Trustee is entitled to partial
20  summary judgment on the issue of breach, the only facts relevant to the instant
21  motion are those related to damages.  The following material facts entitling Trustee
22  to the damages requested are undisputed:

23       1.    On April 26, 2013, the Court issued an order in this matter granting
24  Plaintiff's Motion for Partial Summary Judgment, stating that "Plaintiff is entitled to
25  partial summary judgment on the issue of breach." Dkt. No. 35.

26

27

28

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

DMWEST #9889016 v7

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

2.    As of June 1, 2013, the amount due and owing under the Loan Documents[1] includes the following amounts:

    a.    Principal in the amount of $3,451,719.79;

    b.    Interest from January 1, 2012 through June 1, 2013 in the amount of $293,283.64;

    c.    Default Interest from July 1, 2011 through June 1, 2013 in the amount of $336,945.90;

    d.    Administrative Fees in the amount of $425.00;

    e.    Late Charges in the amount of $175,633.33;

    f.    Appraisal Fees in the amount of $10,250.00;

    g.    Property Inspections in the amount of $786.71;

    h.    Special Servicing Fees in the amount of $15,559.58;

    i.    Interest on Protective Advances in the amount of $2,492.12;

    j.    Interest on P&I Advances in the amount of $7,519.66; and

    k.    Attorneys' Fees in the amount of $366,064.85.

See Ex. 1 at ¶ 3.

3.    As of June 1, 2013, the Loan accrues the following interest:

    a.    Per Diem Interest in the amount of $563.78 and

    b.    Per Diem Default Interest in the amount of $479.41.

See Ex. 1 at ¶ 4.

4.    As of June 1, 2013, the Loan includes the following credits:

    a.    Tax Escrow in the amount of $15,595.96;

    b.    Insurance Escrow in the amount of $6,753.83; and

    c.    Unapplied Funds in the amount of $276,372.69.

See Ex. 1 at ¶ 5.

---

[1] All capitalized terms not defined herein have the meanings abscribed to them in the Motion for Partial Summary Judgment [Dkt. No. 26] and the Loan Documents.

DMWEST #9889016 v7

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

5.    As of June 1, 2013, the total amount due is $4,361,958.10.  <u>See</u> Ex. 1 at ¶ 6.

6.    No payments have been made under the Guaranty.  <u>See</u> Ex. 1 at ¶ 11.

7.    Trustee does not have access to, or the ability to realize upon, the Property because of the Borrower's ongoing bankruptcy.  Furthermore, due to the automatic stay of Borrower's bankruptcy, Trustee does not have possession of the Property.  <u>See</u> In re Summit Plaza Storage Partners, LLC, No. 12-15402-btb (Bankr. D. Nev.); <u>see also</u> Dkt. No. 15 at Ex. G; Dkt. No. 35 at 4:10–13.

## III.   LEGAL ARGUMENT

### A.   Applicable Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

On a summary judgment motion, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise supported motion for summary judgment." <u>Anderson</u>, 477 U.S. at 256.  Once the moving party has carried its burden of showing that no material fact is in dispute, "the party opposing the motion 'may not rest upon the mere allegations or denials in his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial.'" <u>Id.</u> at 248.  A party opposing summary judgment "'must do more than simply show that there is some metaphysical doubt as to the material facts,' . . . and [it] 'may not rely on conclusory allegations or unsubstantiated speculation.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Anderson</u>, 477 U.S. at 249–50.

1

B.    **Guarantors' Breach Caused Damages in the Amount of $4,361,958.10.**

2

In Nevada, "[t]he question of the interpretation of a contract when the facts

3 are not in dispute is a question of law." Grand Hotel Gift Shop v. Granite St. Ins.,

4 108 Nev. 811, 839 P.2d 599, 602 (1992). "A guaranty is a contract 'like all other

5 contracts.'" Blue Hills Office Park, LLC v. J.P. Morgan Chase Bank, 477 F. Supp. 2d

6 366, 380–81 (D. Mass. 2007) (citations omitted) (holding that the guarantor was

7 liable for the full amount of the debt due to the borrower's failure to maintain its

8 SPE status); see also CSFB 2001-CP-4 Princeton Park Corporate Center, LLC v. SB

9 Rental I, LLC, 980 A.2d 1, 410 N.J. Super. 114 (2009) (holding that defendants were

10 liable on a guaranty for taking out a loan encumbering the property without the

11 plaintiff's written consent as required by the loan documents).

12

The elements of a breach of contract claim in Nevada are straightforward. "To

13 prevail on a breach of contract claim, a plaintiff must demonstrate: (1) the existence

14 of a valid contract; (2) a breach by the defendant; and (3) damages resulting from

15 defendant's breach." Keife v. Metro. Life Ins. Co., 797 F. Supp. 2d 1072, 1076 (D.

16 Nev. 2011) (citations omitted).

17

Here, the Court concluded the first two elements have been satisfied as a

18 matter of law. See Dkt. No. 35. Damages resulting from Guarantors' breach is the

19 only remaining issue. As demonstrated below, it is undisputed that Guarantors'

20 breach caused damages in the amount of $4,361,958.10.

21

1.    **The Plain Language of the Guaranty and the Loan Agreement
Mandates an Award of Damages in the Amount of $4,361,958.10.**

22

23

"It has long been the policy in Nevada that absent some countervailing reason,

24 contracts will be construed from the written language and enforced as written."

25 Ellison v. Cal. State Auto. Ass'n, 106 Nev. 601, 603, 797 P.2d 975, 977 (1990)

26 (citation omitted). "Where language in a document is clear and unambiguous on its

27 face, the court must construe it based on this plain language." Love v. Love, 114

28 Nev. 572, 580, 959 P.2d 523, 529 (1998) (citation omitted). Based on the plain

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

DMWEST #9889016 v7

1 language of the Guaranty, Trustee has sustained damages in the amount of
2 $4,361,958.10.

3     Pursuant to the Guaranty, Guarantors "jointly and severally guaranty the
4 performance by Borrower of all obligations and liabilities for which Borrower is
5 personally liable under Section 12.1 of this Agreement." See Dkt. No. 26 at Ex. 1-C.
6 Under Section 12.1 of the Loan Agreement, "Borrower shall be personally liable to
7 Lender for any deficiency, loss or damage suffered by Lender because of: . . . (m) the
8 filing by Borrower or any of its members, partners, or shareholders, or the filing
9 against Borrower, of a petition under the United States Bankruptcy Code or similar
10 state insolvency laws . . . ." See id. at Ex. 1-B at § 12.1. According to Section 10.1 of
11 the Loan Agreement:

> Upon the occurrence of any Event of Default described in
> Section 9.7 [Involuntary Bankruptcy or Other Proceeding]
> or 9.8 [Voluntary Petitions, Etc.], all amounts due under
> the Loan Documents immediately shall become due and
> payable, all without written notice and without
> presentment, demand, protest, notice of protest or
> dishonor, notice of intent to accelerate the maturity
> thereof, notice of acceleration of the maturity thereof, or
> any other notice of default of any kind, all of which are
> hereby expressly waived by Borrower . . . .

18 See id. at § 10.1.

19     First, Borrower committed several Events of Default under the Loan
20 Documents, including, among other things, failure to pay Trustee the full amount
21 due and unpaid under the Loan Documents when the Loan matured on July 1, 2011.
22 See Dkt. No. 1 at ¶ 25. Guarantors admitted this allegation. See Dkt. No. 30 at ¶ 25
23 (admitting allegation); see also Dkt. No. 15 at Ex. J. at 3 (acknowledging and
24 agreeing that, among other things, "the Loan is in default"). Therefore, as of July 1,
25 2011, the Loan was due in full. Borrower's failure to pay the Loan constituted an
26 Event of Default. When Borrower filed a petition under Chapter 11, Title 11 of the
27 United States Bankruptcy Code on May 4, 2012, Borrowers became personally liable,
28 thereby triggering the Guaranty and making Guarantors jointly and severally liable

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

6

1    with Borrower for the Loan that was due in full. <u>See</u> Dkt. No. 26. at Ex. 1 at ¶ 12;

2    Dkt. No. 15 at Ex. G; Dkt. No. 26 at Ex. 1-B at § 12.1 ("Borrower shall be personally

3    liable . . . because of . . . the filing by Borrower . . . of a petition under the United

4    States Bankruptcy Code . . . ."); Dkt. No. 26 at Ex. 1-C (Guarantors "jointly and

5    severally guaranty the performance by Borrower of all obligations and liabilities for

6    which Borrower is personally liable . . . .").

7        Second, when Borrower filed a petition under Chapter 11, Title 11 of the

8    United States Bankruptcy Code on May 4, 2012, an additional Event of Default

9    arose. <u>See</u> Dkt. No. 26. at Ex. 1 at ¶ 12; Dkt. No. 26 at Ex. 1-B at § 9.7; <u>see also</u> Dkt.

10    No. 15 at Ex. G. Borrower became personally liable for any deficiency, loss or

11    damage due to Borrower's bankruptcy filing. <u>See</u> Dkt. No. 26 at Ex. 1-B at § 12.1.

12    Accordingly, Guarantors became jointly and severally liable under the Guaranty.

13    <u>See</u> Dkt. No. 26 at 1-C. Even if the Loan were not already due in full, all amounts

14    due under the Loan Documents immediately became due and payable. <u>See</u> Dkt. No.

15    26 at Ex. 1-B at § 10.1. Therefore, when Borrower filed its bankruptcy petition,

16    Borrower became personally liable for all amounts due under the Loan Documents

17    and Guarantors became jointly and severally liable with Borrower. <u>See id.</u> at § 12.1;

18    Dkt. No. 26 at Ex. 1-C.

19        Finally, Guarantors expressly:

20        waive[d] all rights and defenses of sureties, guarantors,
       accommodation parties and/or co-makers and agree[d] that

21        its obligation under [the Guaranty] shall be primary,
       absolute and unconditional, and that its obligations under

22        [the Guaranty] shall be unaffected by any of such rights or
       defenses, including: . . . (c) the existence of any collateral or

23        other security for the Loan, and any requirement that
       Lender pursue any of such collateral or other security, or

24        pursue any remedies it may have against Borrower and/or
       any other Joinder Party . . . (h) any voluntary or

25        involuntary bankruptcy, receivership, insolvency,
       reorganization or similar proceeding affecting Borrower or

26        any of its assets.

27    <u>See</u> Dkt. No. 26 at Ex. 1-C. Simply stated, Guarantors expressly waived any

28    defenses relating to the existence of any collateral or any voluntary bankruptcy

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

7

1  proceedings.  See also 38A C.J.S. Guaranty § 124 (2013) ("[A] guarantor cannot rely

2  on an independent cause of action existing in favor of the principal against the

3  creditor as a defense, and the guarantor cannot assert as a defense matters affecting

4  the liability of the principal which are personal to the principal, such as . . . the

5  principal's infancy, *bankruptcy*, incapacity." (emphasis added)).      Therefore,

6  Guarantors are obligated under their "guaranty of full and complete payment and

7  performance" in the amount of $4,361,958.10.  See Ellison, 797 P.2d at 977; Love,

8  959 P.2d at 529.

9              2.      **Nevada Assembly Bill 273 ("A.B. 273") is Inapplicable.**

10       While Guarantors will likely argue that they are entitled to an evidentiary

11  hearing pursuant to NRS 40.495(4) before this Court awards damages, Guarantors'

12  argument will fail because A.B. 273 does not apply for the following two reasons.

13              a.      **A.B. 273 is preempted by federal law.**

14       First, A.B. 273 is inapplicable to this case.  Here, the Loan is a securitized loan

15  and federal law governs securitization.

16       Federal law preempts state law in three circumstances:

17       Congress can define explicitly the extent to which its
         enactments pre-empt state law . . . . Second, in the absence
18       of explicit statutory language, state law is pre-empted
         where it regulates conduct in a field that Congress
19       intended the Federal Government to occupy
         exclusively. . . . Finally, state law is preempted to the
20       extent that it actually conflicts with federal law.

21  See Gonzalez v. Arrow Fin. Servs., LLC, 660 F.3d 1055, 1067 (9th Cir. 2011) (citation

22  omitted).  The regulation of the securitization of loans is occupied exclusively by the

23  federal government, as demonstrated by Congress' heavy regulation.[2]    Thus, the

24  ───────────────────
    [2]

25       As recognized by numerous courts, a defendant bank does not invalidate its
         ability to enforce the terms of a deed of trust if the loan is assigned to a trust
26       pool or Real Estate Mortgage Investment Conduit ("REMIC").  See, e.g.,
         Wadhwa v. Aurora Loan Servs., LLC, No. S-11-1784 KJM KJN, 2011 U.S.
27       Dist. LEXIS 73949, 2011 WL 2681483, at *4 (E.D. Cal. July 8, 2011) (not
         reported in F. Supp. 2d) (rejecting argument that 'assignment of the note to a
28       [REMIC] renders any interest in the property other than plaintiffs' somehow
                                                              (continued...)

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

1    regulation of REMIC trusts is a filed in which Congress intends the federal

2    government to occupy exclusively.

3          Furthermore, Congress has regulated National Banks pursuant to the

4    National Bank Act ("NBA"). <u>Aguayo v. U.S. Bank</u>, 653 F.3d 912, 917 (9th Cir. 2011)

5    ("The NBA, as the ultimate statutory authority for national banks, was originally

6    enacted in 1864 to give banks broad authority to exercise 'all such incidental powers

7    as shall be necessary to carry on the business of banking.'"). "[B]ecause there has

8    been a 'history of significant federal presence' in national banking, the presumption

9    against preemption of state law is inapplicable.'" <u>Id.</u> (citing <u>Bank of Am. v. City &</u>

10   <u>Cnty. of San Francisco</u>, 309 F.3d 551, 558–59 (9th Cir. 2002)); <u>see also</u> <u>Barnett Bank,</u>

11   <u>N.A. v. Nelson</u>, 517 U.S. 25, 33 (1996). Thus, any state law that interferes with this

12   legislation is preempted. <u>Waite v. Dowley</u>, 94 U.S. 527, 533 (1877) ("Where there

13   exists a concurrent right of legislation in the States and in Congress, and the latter

14   has exercised its power, there remains in the States no authority to legislate on the

15   same matter.").

16         "Under its delegated powers, the OCC has promulgated regulations

17   specifically directed toward identifying which state laws affecting national banks are

18   preempted." <u>Aguayo</u>, 653 F.3d at 919 (citing OCC, Preemption Final Rule, 69 Fed.

19   Reg. 1916 (2004); 23 OCC Q.J. 28 (Mar. 2004), 2004 WL 2360325). The NBA

20   _____

(...continued)

      invalid'); <u>Hafiz v. Greenpoint Mortgage Funding, Inc.</u>, 652 F. Supp. 2d 1039,
21    1043 (N.D. Cal. 2009) (argument that 'all defendants lost their power of sale
      pursuant to the deed of trust when the original promissory note was assigned
22    to a trust pool' is 'both unsupported and incorrect'); The alleged 'securitization
      of a loan does not in fact alter or affect the legal beneficiary's standing to
23    enforce the deed of trust.' <u>Reyes v. GMAC Mortgage LLC</u>, No. 2:11-CV-0100
      JCM (RJJ), 2011 U.S. Dist. LEXIS 40953, 2011 WL 1322775, at *2 (D. Nev.
24    Apr. 5, 2011). 'Securitization merely creates a separate contract, distinct from
      [p]laintiffs['] debt obligations under the note, and does not change the
25    relationship of the parties in any way.' <u>Reyes</u>, 2011 U.S. Dist. LEXIS 40953,
      2011 WL 1322775, at *3 (citation omitted).
26

27   <u>Christiansen v. Wells Fargo Bank</u>, No. C 12-02526 DMR, 2012 U.S. Dist. LEXIS 142070, *9–
     11 (N.D. Cal. Oct. 1, 2012).

28

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

9

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

1  specifically provides that "state laws that obstruct, impair, or condition a national

2  bank's ability to fully exercise its Federally authorized real estate lending powers do

3  not apply to national banks." See 12 CFR 34.4(a).  The NBA goes on to state that "a

4  national bank may make real estate loans under 12 U.S.C. 371 and § 34.3, without

5  regard to state law limitations concerning . . . '[p]rocessing, origination, servicing,

6  sale or purchase of, or investment or participation in mortgages . . . ."  See id. at

7  34.4(a)(10).   This language is identical to the preemption language in the Home

8  Owner's Loan Act ("HOLA") regulation which has been applied by numerous courts

9  to prohibit state regulation which interferes with REMIC trusts, like we have here.

10  See Sami v. Wells Fargo Bank, No. C 12-00108 DMR, 2012 U.S. Dist. LEXIS 38466,

11  *13 (N.D. Cal. Mar. 21, 2012) ("As already recognized by numerous courts, a

12  defendant bank does not invalidate its ability to enforce the terms of a deed of trust

13  if the loan is assigned to a trust pool or Real Estate Investment Conduit

14  ("REMIC").");  see also Hague v. Wells Fargo Bank, No. C 11-02366 THE, 2012 U.S.

15  Dist. LEXIS 41013 (N.D. Cal. Mar. 26, 2012) (holding that the securitization of the

16  mortgage falls squarely within 12 C.F.R. 560.2(b)(10)'s specific preemption of state

17  claims that deal with investment in mortgages).

18         The state law at issue, A.B. 273, conflicts with federal law that allows for the

19  securitization of loans because the state law decreases the enforcement value of a

20  loan to zero when the loan passes from the originating lender to the trustee of a loan

21  pool.  A similar interference by state law occurs each time the loan is assigned to a

22  new trustee for nominal consideration in the ordinary course of administering

23  securitized loans.  This is a significant impairment to, and in fact, an invalidation of

24  Holder's ability to enforce the loan.  This necessarily and negatively impacts a loan

25  pool, the health of which is a fundamental aspect behind securitization.  At least as

26  to securitized loans, A.B. 273 limits a national bank's ability, in its role as a Trustee

27  of a securitized loan pool, to sell, purchase, invest, or participate in securitized loans

28  secured by real property.   Thus, the NBA preempts A.B. 273.   See 12 CFR

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

1    34.4(a)(10).

2          Here, Wells Fargo Bank. N.A., as Trustee, is a National Bank, and A.B. 273

3    intereferes with its rights under federal law.  Accordingly, A.B. 273 is preempted and

4    inapplicable in this case.  Martinez v. Wells Fargo Home Mortg., Inc., 598 F.3d 549,

5    557 (9th Cir. 2010) ("[T]he types and features of state laws specifically enumerated

6    in 12 C.F.R. § 34.4 interfere with the ability of national banks to operate under

7    uniform federal standards, and are thus preempted.") (citing OCC Interpretive

8    Letter No. 1005, 2004 WL 3465750 (June 10, 2004)); see also Rose v. Chase Bank

9    USA, N.A., 513 F.3d 1032 (9th Cir. 2008).

               b.     A.B. 273 does not apply retroactively.

11         "In Nevada, as in other jurisdictions, statutes operate prospectively, unless the

12   Legislature clearly manifests an intent to apply the statute retroactively, or it

13   clearly, strongly, and imperatively appears from the act itself that the Legislature's

14   intent cannot be implemented in any other fashion."  Pub. Employees' Benefits

15   Program v. Las Vegas Metro. Police Dep't, 124 Nev. 138, 154, 179 P.3d 542, 553

16   (2008) (internal quotations and citations omitted).  "When the Legislature intends

17   retroactive application, it is capable of stating so clearly."  Id.  While Section 7 of A.B.

18   273 states that Section 5.5 of the bill "become[s] effective upon passage and

19   approval," this statement falls far short of a clear manifestation of intent that the

20   amendments to NRS 40.495 contained in Section 5.5 were intended to apply

21   retroactively.  Moreover, the Legislative history of A.B. 273 demonstrates that the

22   Legislature did not intend A.B. 273 to apply retroactively.

23         Assemblyman Segerblom:  Is this bill retroactive?

24         Assemblyman Conklin:   No, it is not.   You would be
           reaching back into contracts that were made under certain
25         circumstances.  If that were done, who would ever want to
           sign a contract or do business in a state that would nullify
26         contracts? . . . To retroactively pass laws would set a
           remarkably dangerous precedent for individuals and
27         businesses that enter into contracts because you will
           wonder how it can be enforced or how it can change. . . .
28

11

1    See Minutes of the Meeting of the Assembly Committee on Commerce and Labor

2    Seventy-Sixth Session dated March 23, 2011 at p. 7, attached hereto as Ex. 2.  The

3    Legislature goes on to state "I wish we could do something in retrospect, but the

4    consequences would be dire."  See id. at p. 8.  The Loan Documents were entered into

5    on June 1, 2004.  See Dkt. No. 26 at Exs. 1-B & 1-C.  Since the statute does not apply

6    retroactively to this case, Guarantors are not entitled to an evidentiary hearing

7    regarding the fair market value of the property, which was amended by A.B. 273.

8    See A.B. 273 at § 5.5.

9              3.      Borrower's Bankruptcy Proceedings Do Not Entitle Guarantors to
10                     a Setoff.

11            Since Borrower filed a bankruptcy petition, Guarantors will likely argue that

12    they should be entitled to a setoff from the outcome of the bankruptcy proceedings.

13    Specifically, Guarantors may repeat their argument that Plaintiff may recover the

14    full value of the Loan.  See Dkt. No. 15 at 8:19-20.[3]  Any such argument by

15    Guarantors should be rejected.

16            First, as stated above, Guarantors expressly agreed that their obligations will

17    be unaffected by "any voluntary or involuntary bankruptcy, receivership, insolvency,

18    reorganization or similar proceedings affecting Borrower or any of its assets."  See

19    Dkt. No. 26 at Ex. 1-C.  Accordingly, the Court should disregard any argument that

20    Guarantors are entitled to an offset from the outcome of Borrower's bankruptcy

21    proceedings because the Guaranty plainly contradicts such an argument.  See id.; see

22    also Ellison, 797 P.2d at 977 ("[C]ontracts will be construed from the written

23    language and enforced as written."); Love, 959 P.2d at 529 ("Where language in a

24    document is clear and unambiguous on its face, the court must construe it based on

25    this plain language.").

26

27            [3] Citation refers to page number and line number.  For example, "8:19" refers
      to page number 8 and line number 19.

28

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

DMWEST #9889016 v7

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

1  Second, in this case, Guarantors cannot escape their obligations under the

2  Guaranty by arguing that Plaintiff may recover the full value of the Loan through

3  Borrower's bankruptcy action.  Here, Guarantors "jointly and severally guaranty the

4  performance by Borrower of all obligations and liabilities for which Borrower is

5  personally liable."  See Dkt. No. 26 at Ex. 1-C.  Upon Borrower's filing of a petition

6  under the United States Bankruptcy Code, Borrower became personally liable to

7  Lender for any deficiency, loss or damage.  See id. at Ex. 1-B at § 12.1.  Since

8  Borrower's filing of a bankruptcy petition constitutes an Event of Default, "all

9  amounts due under the Loan Documents immediately shall become due and

10  payable."[4]  See id. at § 10.1.  Moreover, as of the Maturity Date of July 1, 2011, the

11  Loan was required to be paid in full, and that same amount then became recourse to

12  Guarantors upon Borrower's bankruptcy filing.  Guarantors admitted that that

13  Borrower failed to cure.  See Dkt. No. 30 at ¶ 25; Dkt. No. 15 at Ex. J. at 3.

14  Consequently, Trustee is entitled to "all outstanding principal, accrued and unpaid

15  interest, default interest, late charges, and any and all other amounts due under the

16  Loan Documents."  See Dkt. No. 15 at Ex. C at § 2.3(b).

17  Since Guarantors have not made any payments under the Guaranty, this

18  Court should award Plaintiff all amounts due and payable under the Loan

19  Documents.  This result makes perfect sense given that one of the purposes of the

20  Guaranty was to protect Plaintiff in event of Borrower's bankruptcy.  See 38A C.J.S.

21  Guaranty § 111 (2013) ("Bankruptcy proceedings against the principal debtor do not

22  affect the guarantor's obligations under the guaranty."); see also In re Harvey Cole

23  Co., Inc., 2 B.R. 517, 520 (Bankr. W.D. Wash. 1980) ("The purpose of a guaranty is to

24  provide a source of alternative assets to the extent the bankrupt or debtor has

25  none.").  A guaranty triggered by a bankruptcy would be worthless if the Court finds

26

27  [4] Including as to Guarantors because there was already a maturity default
    that obligated Borrower to pay the full amount due.

28

1  otherwise.  See JPMorgan Chase Bank, N.A. v. Meritage Homes Corp., No. 2:11-cv-

2  01364-PMP-RJJ, 2012 U.S. Dist. LEXIS 125549, at *52 (D. Nev. Sept. 4, 2012)

3  (rejecting guarantor's argument that there are no damages and noting guarantor's

4  argument "would undermine the very purpose of the [guaranty], which was triggered

5  only upon [borrower's] bankruptcy"); see also In re Extended Stay Inc., 418 B.R. 49,

6  58 (Bankr. S.D.N.Y. 2009) (noting that Bank of America's breach of contract claim

7  against guarantors are independent of any claims Bank of America may have against

8  bankruptcy debtors and that guarantors have no right of offset or indemnity against

9  bankruptcy debtors); United States ex rel. Chemetron Corp. v. George A. Fuller Co.,

10  250 F. Supp. 649, 656 (D. Mont. 1965) (noting that bankruptcy court does not have

11  the power "to affect the independent contract of guaranty" and that sureties were not

12  discharged of their obligation).

13      **4.  Any Possible Double Recovery Will Be Prevented.**

14    Guarantors may argue that a finding of damages in any amount will lead to

15  double recovery for the Trustee.  Such concerns would be misplaced.  The Nevada

16  statutes permit a creditor (i.e., Trustee) to proceed to judgment and full satisfaction

17  of that judgment before the Property is sold.  Pursuant to NRS 40.475, if the

18  indebtedness owed to Trustee is fully satisfied by guarantors, the guarantors "step

19  into the shoes" of Trustee with regard to the Loan and the guarantors would realize

20  the proceeds of a subsequent trustee's sale of the Property.  See NRS 40.475.  In

21  other words, if the Court awards damages in favor of Trustee in the amount of

22  $4,361,958.10 and Guarantors satisfy the judgment before a trustee's sale,

23  Guarantors step into the shoes of Trustee and would receive proceeds from a

24  subsequent trustee's sale of the Property.  Alternatively, if the indebtedness owed to

25  Trustee is partially satisfied through a judgment against guarantors, the guarantors

26  will have an interest in the Property to the extent of the proceeds of the trustee's sale

27  exceed what remains owed to Trustee.  See NRS 40.485.  In accordance with these

28  statutes and in either case, Trustee will not obtain a double recovery.

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

14

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

1    Furthermore, any possible double recovery will be prevented because Nevada

2    statutes permit a judgment debtor to file an affidavit refusing to satisfy a judgment.

3    See NRS 21.280.  Then, the court may require the judgment debtor to appear and

4    explain its refusal to satisfy a judgment.  See id.  In other words, if the Court were to

5    award damages in favor of Trustee and Trustee executes on the judgment,

6    Guarantors may file an affidavit refusing to satisfy the judgment.  If applicable,

7    Guarantors can affirm that satisfaction of the judgment would constitute double

8    recovery, which a court would ultimately decide.  Therefore, any concerns of a

9    possible double recovery should be dispelled based on the Nevada statutes.

10         **5.**    **Awarding Judgment to Trustee Will Benefit Borrower's**

11               **Bankruptcy Estate.**

12    One reason for having a personal guaranty that is triggered upon a borrower's

13    bankruptcy is to assure that the lender has an alternative source of payment.

14    R.I.D.C. Indus. Dev. Fund v. Snyder, 539 F.2d 487, 491 (5th Cir. 1976) ("One of the

15    primary purposes for obtaining a guarantor to a note is to provide an alternative

16    source of repayment in the event that the principal obligor's debt is discharged in

17    bankruptcy." (citation omitted)); see also McDonald v. Alexander, 121 Nev. 812, 820,

18    123 P.3d 748, 753 (2005) (noting that the purpose of a guaranty contract is to make

19    the guarantor obligated in the event that the principal debtor is unable to meet the

20    underlying obligation and the collateral proves insufficient to satisfy the debt);

21    Restatement (Third) of Suretyship and Guaranty § 34 cmt. a–b (1996) ("The purpose

22    of the secondary obligation is to stand behind the obligation of the principal obligor

23    to perform the underlying obligation, thereby assuring the obligee of the performance

24    to which it is entitled. . . . [T]here are two possible defenses of the principal obligor—

25    discharge in insolvency proceedings and lack of capacity—against which the

26    secondary obligation is designed to protect. . . . [T]hese defenses may not be raised by

27    the secondary obligor. . . . A secondary obligation protects against the inability or

28    unwillingness of the principal obligor to perform the underlying obligation.").

One of the purposes of the bankruptcy code is to maximize the value of the bankruptcy estate.  See Toibb v. Radloff, 501 U.S. 157, 163 (1991) ("Chapter 11 also embodies the general Code policy of maximizing the value of the bankruptcy estate." (citation omitted)).  If the Court entered judgment in favor of Trustee and Trustee can recover from Guarantors, any amount recovered will lower the amount the bankrupt Borrower owes, thus freeing up its money for other creditors—in essence, maximizing the value of the bankruptcy estate.  Accordingly, the Court should enter judgment in favor of Trustee.

[<em>Remainder of Page Intentionally Left Blank</em>]

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

DMWEST #9889016 v7

## IV.    CONCLUSION

Since the Court found Guarantors liable, the only remaining issue is damages. As demonstrated above, Borrower committed an Event of Default when it failed to pay Trustee the full amount due and unpaid under the Loan Documents when the Loan matured on July 1, 2011.  When Borrower subsequently filed its voluntary bankruptcy petition, Borrower became personally liable, which triggered the Guaranty, and Guarantors became jointly and severally liable with Borrower for the Loan that was due in full.

Additionally, when Borrower filed its voluntary bankruptcy petition, Borrower became personally liable for any deficiency, loss or damage due to its bankruptcy petition.  Even if the Loan were not already due in full, all amounts due under the Loan Documents immediately became due and payable, which Guarantors are jointly and severally liable under the Guaranty.

Guarantors made no payments under the Guaranty.  Based on the foregoing, Trustee requests that the Court issue summary judgment against Guarantors in the undisputed amount of $4,361,958.10, plus Per Diem Interest in the amount of $563.78 and Per Diem Default Interest in the amount of $479.41.

Dated: June 21, 2013.

BALLARD SPAHR LLP

By: _____
Abran E. Vigil
Nevada Bar No. 7548
Edward Chang
Nevada Bar No. 11783
100 North City Parkway, Suite 1750
Las Vegas, Nevada 89106

*Attorneys for Plaintiff*

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

DMWEST #9889016 v7

**CERTIFICATE OF SERVICE**

      I hereby certify that, on the ⟨handwritten⟩ day of June 2013 and pursuant to Fed. R. Civ. P. 5(b), I served via CM/ECF and/or deposited for mailing in the U.S. Mail a true and correct copy of the foregoing **Plaintiff's Motion for Summary Judgment**, postage prepaid and addressed to the following:

David Wall, Esq.
Telia U. Williams, Esq.
HUTCHISON & STEFFEN, LLC
Peccole Professional Park
10080 West Alta Drive
Suite 200
Las Vegas, Nevada 89145

*Attorneys for Defendants*

An employee of BALLARD SPAHR LLP

BALLARD SPAHR LLP
100 NORTH CITY PARKWAY, SUITE 1750
LAS VEGAS, NEVADA 89106
(702) 471-7000 FAX (702) 471-7070

DMWEST #9889016 v7

18