UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A., ) | | |
|               Plaintiff, ) | | |
| ) | 2:12-cv-01521-RCJ-CWH | |
| vs. ) | | |
| ) | | |
| DANIEL J. ELEFANTE et al., ) | **ORDER** | |
| ) | | |
|               Defendants. ) | | |

This case arises out of the default of a commercial loan and the alleged failure of two guarantors to honor a guaranty of the loan. Pending before the Court is a Motion for Summary Judgment (ECF No. 40). For the reasons given herein, the Court denies the motion.

## I.     FACTS AND PROCEDURAL HISTORY

On or about June 1, 2004, non-party Summit Plaza Storage Partners, LLC ("Summit Plaza") borrowed $4.1 million from non-party General Electric Capital Corp. ("GECC"). (*See* Compl. ¶¶ 9–10, Aug. 27, 2012, ECF No. 1). Defendants Daniel J. Elefante and Theodore H. Toch guaranteed the loan via a "Joinder" thereto (the "Guaranty"). (*See id.* ¶¶ 4–5, 13). Under the Guaranty, Defendants guaranteed any obligations for which Summit Plaza was "personally liable." (*See id.* ¶ 15 (citing Guaranty, first unnumbered paragraph, ECF No. 15-2, at 2). Summit Plaza was "personally liable" under the Loan Agreement for any deficiency on the loan, *inter alia*, if it filed for bankruptcy. (*See* Loan Agreement § 12.1(m), at ECF No. 15-1, at 58–59).

1  GECC later assigned the loan to Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo"),
2 endorsing the promissory note. (Compl. ¶¶ 19–20).  Summit Plaza defaulted via nonpayment and
3 later filed for bankruptcy protection in response to Wells Fargo's state court lawsuit against it,
4 thereby triggering "personal liability" under § 12.1(m) to any extent it did not already obtain, and
5 therefore triggering Defendants' liability under the Guaranty. (*See id.* ¶¶ 25, 28–30).

6  Plaintiff sued Defendants in this Court on a single claim for breach of contract (the
7 Guaranty).  Defendants moved to dismiss for failure to state a claim, and the Court denied the
8 motion because Plaintiff sufficiently alleged guarantor liability under the Guaranty.  Plaintiff
9 moved for partial offensive summary judgment on the issue of breach of guaranty.  the Court
10 granted the motion when Plaintiff produced evidence supporting the claim and Defendants
11 produced no evidence in response.  The Court ruled that only a damages calculation remained for
12 trial.  Plaintiff has now moved for summary judgment as to that remaining issue.

13 **II.    LEGAL STANDARDS**

14  A court must grant summary judgment when "the movant shows that there is no genuine
15 dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.
16 Civ. P. 56(a).  Material facts are those which may affect the outcome of the case. *See Anderson v.*
17 *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there
18 is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  A
19 principal purpose of summary judgment is "to isolate and dispose of factually unsupported
20 claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  In determining summary
21 judgment, a court uses a burden-shifting scheme:

22,23,24
> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

25 *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations

and internal quotation marks omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

///

## III. ANALYSIS

Plaintiff asks for summary judgment on its damages claim of $4,361,958.10, plus post-judgment interest of $563.78 per day and post-judgment default interest of $479.41 per day. The Court denies the motion. Nevada Revised Statutes section 40.495(4) requires an evidentiary hearing to ensure that a guarantor of a debt secured by real property to be foreclosed is not held liable for more than the lesser of: (1) the difference between the indebtedness and the fair market value of the collateral as of the date the action is commenced; or (2) the difference between the indebtedness and the actual foreclosure sale price. *See* Nev. Rev. Stat. § 40.495(4).

The Court rejects Plaintiff's argument that section 40.495(4) is preempted by federal law simply because: (1) the loan at issue is securitized; and (2) federal law governs the securitization of the loan. For example, although federal law governs copyrights, the assignments of copyrights are governed by state law. So long as the state law at issue here does not purport to regulate the securitization of the loan, which it does not, there is no preemption. The Court has rejected similar arguments by borrowers that securitization of a loan has anything to do with the loan's enforceability under state law. Many, if not most, modern mortgage loans are securitized, and no court to this Court's knowledge has ever held that state foreclosure laws are therefore preempted as to them.

The Court also rejects Plaintiff's argument that section 40.495(4) should not be applied retroactively in this case. Subsection 4 was added by Assembly Bill 273, effective October 1, 2011. It requires an evidentiary hearing to determine the fair market value of the property as of the commencement of the action, and the money judgment is then limited to the lesser of the debt minus the fair market value or the debt minus the amount actually recovered at a foreclosure sale. Another provision of Assembly Bill 273, section 40.459(1)(c), probably could not apply retroactively here without implicating the Contract Clause, because that section limits an assignee creditor's recovery to the lesser of *the amount the assignee paid for the debt* minus the

1  fair market value or *the amount the assignee paid for the debt* minus the amount actually
2  recovered at a foreclosure sale.  The retroactive application of section 40.459(1)(c) would
3  seriously interfere with the benefit of the assignee's bargain with his assignor, because the
4  purchaser of debt typically purchases at a discount based upon his estimation of the chances that
5  the debt will be recoverable.  An interceding statute limiting recovery based upon the amount
6  actually paid for the debt would wreak havoc upon such contracts, which are only profitable in
7  the aggregate because although many purchased debts will ultimately be worthless, many others
8  (that were purchased at a discount) will be paid in full or in part, making the endeavor profitable
9  in the aggregate.  But Defendants do not attempt to invoke section 40.459(1)(c) in this case, and
10 the statute they do invoke, section 40.495(4), does not impair an assignee creditor's contract,
11 because it simply requires an evidentiary hearing to determine the fair market value of the
12 secured property, limiting the money judgment to the amount due on the original contract
13 exceeding that amount.  The original or assignee creditor still has a security interest in the
14 property worth the difference, because the statute only applies to properties secured by mortgages
15 or liens.  So the value of the contract is simply not impaired.  The remedies and procedures to
16 obtain them have simply been altered.  A creditor is simply required to make himself whole
17 through foreclosure.  His ability to sue directly on the debt or surety is limited, accordingly, but
18 the value of his contract is preserved.  At most, the contract is impaired to the extent of the
19 incidental costs of conducting a foreclosure sale where the creditor would rather elect only to sue
20 on the note or guaranty.  Even assuming a Contract Clause violation in this regard—and the
21 Court does not so rule at this time—a court could easily remedy this by adding the incidental
22 costs of foreclosure to any money judgment in cases where a foreclosure has already occurred or
23 by amending any money judgment to reflect those costs pursuant to a Rule 60(b) motion where a
24 creditor does not foreclose until after the section 40.495(4) hearing.
25 ///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 40) is DENIED.

IT IS FURTHER ORDERED that the Court shall hold an evidentiary hearing pursuant to section 40.495(4) to determine the fair market value of the property at 4375 E. Sahara Ave., Las Vegas, NV 89104, APN: 161-08-110-003 and 161-08-110-004 as of August 27, 2012, at 10:00 a.m. on October 22, 2013, in Las Vegas Courtroom 4B, Lloyd D. George Courthouse.

IT IS SO ORDERED.

Dated this 21st day of August, 2013.

_____
ROBERT C. JONES
United States District Judge